IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE:  $165,388.23 IN INTERPLEADED FUNDS             CASE NO. 5:20-CV-05063

**MEMORANDUM OPINION AND ORDER**

Before the Court is Claimant Mark Beall's Motion to Intervene and a Memorandum Brief in Support (Docs. 22 & 23).  Claimant Pamela Martin filed a Response in Opposition and a Memorandum Brief in Support (Docs. 24 & 25).  Also before the Court is Ms. Martin's Motion to Dismiss or Abstain and Memorandum Brief in Support (Docs. 26 & 27). Mr. Beall filed two Responses in Opposition (Docs. 28 & 29), and Ms. Martin filed a Reply (Doc. 30).  The Motions are ripe for consideration, and for the reasons set forth below, Mr. Beall's Motion to Intervene (Doc. 22) is dismissed as **MOOT** and Ms. Martin's Motion to Dismiss or Abstain (Doc. 26) is **GRANTED**.

**I.  BACKGROUND**

In fall 2003, State Farm issued a deferred life annuity insurance policy for Patricia Beall (the "Policy") listing her son, Mark Beall, as the beneficiary of the Policy. (Doc. 2, p. 2).  In May 2010, Ms. Beall created a living trust (the "2010 Living Trust") and changed the beneficiary of the Policy to the 2010 Living Trust.  *Id.*  The 2010 Living Trust names Ms. Beall as trustee and nominates Ms. Beall's daughter, Pamela Martin, as successor trustee.  Upon Ms. Beall's death, the trust's property (including the Policy proceeds) was to be divided between her children—Pamela Martin and Mark Beall—and funds within a specific bank account were to be distributed to Ms. Beall's grandchildren.  *See* Doc. 24-1, pp. 20–21.  With the creation of the 2010 Living Trust, Ms. Beall also appointed Ms.

Martin as her durable power-of-attorney. (Doc. 2-4). Then in May 2016, Ms. Beall amended and revised her 2010 Living Trust (the "First Restated Trust") (Doc. 24-1, pp. 30–48). The First Restated Trust did not alter the distribution of trust assets, but it did remove Ms. Beall as the initial trustee and instead installed Ms. Martin as trustee. *See id.* at pp. 19–22.

Later, in May 2017, with the help of counsel, Ms. Beall again amended and revised her 2010 Living Trust (the "Second Restated Trust") (Doc. 2-5). The Second Restated Trust removed Ms. Martin as initial trustee, named Ms. Beall as initial trustee, appointed Mr. Beall as successor trustee, and amended the distribution of assets. Specifically, the Second Restated Trust provided that upon Ms. Beall's death, all trust assets should be distributed to Mr. Beall, if living, and if not living, to Ms. Beall's grandchildren. *Id.* at p. 14. Ms. Beall also revoked all pre-existing powers of attorney, completing the exclusion of Ms. Martin as the recipient of any trust assets.

This simmering dispute reached a boiling point when Ms. Beall died in October 2019. On January 14, 2020, Ms. Martin filed a complaint in the Circuit Court of Benton County against Mr. Beall seeking compensatory and punitive damages for breach of fiduciary duty, conversion, constructive fraud, and fraudulent concealment. *See Martin v. Beall*, 04CV-20-114 (Ark. Cir. Ct.). These claims all relate to Mr. Beall's actions as putative trustee. In her complaint in that action Ms. Martin also seeks an injunction preventing Mr. Beall from disposing of the trust assets and a declaration that

> [P]ursuant to the terms of the Original Trust Agreement and the Restated Trust Agreement, upon the [Patricia] Beall Date of Death [Ms. Martin] was authorized to be the Successor Trustee and to have full control and authority over the Beall Trust assets pursuant to the terms of the Original Trust Agreement and the Restated Trust Agreement.

2

Mr. Beall filed an untimely answer to the state-court complaint, and on June 2, 2020, the state court entered an order declaring Mr. Beall to be in default. Mr. Beall moved to vacate that default, but that motion was denied on October 19, 2020.

On April 9, 2020, State Farm filed this interpleader action under 28 U.S.C. § 1335 to determine who is entitled to the proceeds of the Policy, which total $165,388.23. State Farm named Ms. Martin and Mr. Beall as potential claimants. On August 19, 2020, the Court held a Rule 16 Case Management Hearing. Following that hearing, the Court directed State Farm to deposit the funds at issue with the Court and dismissed State Farm from the action (Doc. 21). Ms. Martin and Mr. Beall now remain as parties as potential claimants of the Policy proceeds. Due to the related state-court litigation, the Court directed the parties to file briefing on whether this Court should abstain from hearing the merits of the trust dispute and instead let the state court decide the issues. *Id.*

Consistent with that Order, Mr. Beall filed a Motion to Intervene in which he argues that he should be permitted to intervene as a matter of right in his capacity as successor trustee of the Second Restated Trust. Alternatively, he requests permissive intervention under Rule 24(b). His proposed intervenor complaint seeks a declaration "that the 2017 Restated Beall Trust is the beneficiary under the Policy and entitled to its benefits . . . ." (Doc. 22-1, p. 3). For her part, Ms. Martin resists intervention on the grounds that: (1) Mr. Beall's motion is untimely; (2) Mr. Beall is already a party in his individual capacity; and (3) this matter should be resolved in the pending state-court action. Separately, Ms. Martin filed a Motion to Abstain or Dismiss in which she argues that the Court should stay or dismiss this action while the state-court action is ongoing.

## II.  DISCUSSION

Now that the Court has allowed State Farm to deposit the Policy proceeds, the question before the Court is whether it should proceed with determining who is entitled to the Policy proceeds and allow Mr. Beall to intervene and file his proposed complaint, or whether the Court should abstain and let the matter play out in state court.  As explained below, the Court concludes that abstention is appropriate.

### A.  Which Abstention Doctrine Applies?

Abstention in favor of a state-court proceeding is typically disfavored.  "Generally, a federal district court must exercise its jurisdiction over a claim unless there are exceptional circumstances for not doing so." *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 996 (8th Cir. 2005) (internal quotation marks omitted).  Federal courts have "the virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  In two relevant contexts, however, the Supreme Court has held that a parallel action can give rise to a federal district court properly abstaining from exercising jurisdiction. *See id.*; *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495–96 (1942).  In the stricter *Colorado River* analysis, district courts may only abstain from cases where there is a parallel action when there are "exceptional circumstances" to do so. *Colo. River*, 424 U.S. at 813.  A less stringent standard applies for actions brought under the Declaratory Judgment Act, a standard known as *Brillhart/Wilton* abstention. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Brillhart*, 316 U.S. at 495–96.  In determining whether an action seeks declaratory relief, courts examine whether it is being asked to "declare the rights of litigants." *Wilton*, 515 U.S. at 286.  Where an action seeks declaratory judgment,

4

"obligatory jurisdiction yields to considerations of practicality and wise judicial administration." *Scottsdale*, 426 F.3d at 997.

The question of whether the more lenient *Brillhart/Wilton* abstention doctrine or the stricter *Colorado River* doctrine applies to interpleader cases has not yet been examined by the Eighth Circuit. However, other circuits have held that, as long as the interpleader relief sought is declaratory in nature, the *Brillhart/Wilton* doctrine extends to interpleader cases. *See, e.g.*, *Arnold v. KJD Real Est., LLC*, 752 F.3d 700, 707 (7th Cir. 2014) (discussing *Brillhart/Wilton* abstention in the context of interpleader actions involving declaratory relief); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 21–22 (2d Cir. 1997) (same); *NYLife Distribs., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 382 (3d Cir. 1995) (same); *see also Great W. Cas. Co. v. Fredrics*, 2011 WL 5326236, at *3 (W.D.N.C. Nov. 4, 2011) (examining this question as an issue of first impression and holding that *Brillhart/Wilton* abstention applies to interpleader actions involving declaratory relief). Further, while the Eighth Circuit has not directly ruled on this particular issue, the Eighth Circuit has held that *Brillhart/Wilton* and not the stricter *Colorado River* doctrine applies where "the essence of [the] lawsuit is one for declaratory judgment . . . ." *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 796 (8th Cir. 2008).

After a careful review of the relevant authority, the Court agrees with the reasoning of those courts who have held that the discretionary standard of *Brillhart/Wilton* applies in the statutory interpleader context, and the Court will apply that standard here. This standard is consistent with the Supreme Court's recognition that the basis of an interpleader action is equity. *See Sanders v. Armour Fertilizer Works*, 292 U.S. 190, 199 (1934); *see also Humble Oil & Refin. Co. v. Copeland*, 398 F.2d 364, 368 (4th Cir. 1968)

5

("The genesis of interpleader is equity, and we perceive no reason why it should be denied the remedial flexibility that is characteristic of a chancellor's decree.").

Further, the facts here are consistent with the application of the *Brillhart/Wilton* standard. Specifically, State Farm filed this action seeking a declaration regarding the rights of various claimants to the Policy proceeds, and Mr. Beall seeks intervention for the sole purpose of obtaining a declaration that the Second Restated Trust is the beneficiary of the Policy proceeds. Litigation seeking to declare the rights of litigants falls squarely under declaratory relief. *See Wilton*, 515 U.S. at 286; *see also Three Rivers Distrib., LLC v. Roussel*, 2011 WL 860655, at *4 (E.D. Ark. Mar. 9, 2011) (abstaining under *Brillhart/Wilton* where the plaintiff sought a declaration that an adverse writ of garnishment had been satisfied). Accordingly, the Court finds that *Brillhart/Wilton* doctrine, not *Colorado River*, applies to this interpleader action because the action is, at its essence, one for declaratory relief.[1]

### B. Is the State-Court Action a Parallel Proceeding?

The Court concludes that this interpleader action is parallel with the state-court case. The determination of whether a suit for declaratory judgment in a federal court is parallel to a state-court action is a "threshold determination for identifying the extent of a district court's discretion to grant a stay." *Lexington Ins. Co. v. Integrity Land Title Co., Inc.*, 721 F.3d 958, 968 (8th Cir. 2013). If the suits are parallel, "a district court enjoys broad discretion" to abstain under the *Brillhart/Wilton* doctrine. *Id.* at 967 (citing *Wilton*,

---

[1] The parties cite the Court to *McKnight v. Bank of America*, 2006 WL 151916 (E.D. Ark. 2006) and *Estate of Miller v. Miller*, 51 F. Supp. 3d 861 (E.D. Ark. 2014), as persuasive authorities. But both of these cases involve the application of the *Colorado River* abstention doctrine without analysis of whether the *Brillhart/Wilton* doctrine was applicable. Accordingly, these cases are inapposite to the case at bar.

515 U.S. at 997). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Scottsdale*, 426 F.3d at 997 (internal quotations omitted). Also, the issues at hand must not be governed by federal law. *Royal Indem. Co.*, 511 F.3d at 793 (citing *Brillhart*, 316 U.S. at 495).

The suits are parallel. In the state-court case, Ms. Martin alleges various state-law claims against Mr. Beall, all of which assert that Mr. Beall has improperly acted as trustee to the trust assets. Further, Ms. Martin seeks an injunction preventing Mr. Beall from disposing of the trust assets and a declaration that she is the proper trustee pursuant to the terms of the 2010 Living Trust and the First Restated Trust. It is clear to the Court that an ultimate resolution of Ms. Martin's claims in the state-court action will require the state court to rule on the state-law question of whether the Second Restated Trust supersedes the 2010 Living Trust and the First Restated Trust.[2] The state court's ruling on that issue will in turn determine the proper trustee and beneficiaries of the trust assets, including the Policy proceeds.

In the present case, the only remaining question is how to distribute the Policy proceeds between the parties. Indeed, the only relief sought in Mr. Beall's proposed intervenor complaint is a declaration that the Second Restated Trust governs the Policy

---

[2] Indeed, the state court acknowledged that this question must be resolved in that action. In his June 2, 2020, order, the Honorable Judge John Scott found

> That [Ms. Martin] brought this cause of action against [Mr. Beall] to declare the Declaration of Second Restatement of the Patricia Louise Beall Living Trust Agreement dated May 18, 2017 to be null and void; to name [Ms. Martin] as the Trustee of the Patricia Louise Beall Living Trust; to name the Plaintiff as a beneficiary of the Patricia Louise Bell Living Trust; and to order the [Mr. Beall] to provide an inventory and accounting of the trust assets and distributions from the Trust.

7

proceeds. To resolve these claims, the Court must determine whether the Second Restated Trust is valid (if it is, Mr. Beall is trustee and the sole beneficiary of the Policy proceeds) or whether the 2010 Living Trust and the First Restated Trust remain in effect (in which case, Ms. Martin is trustee and both siblings are entitled to the Policy proceeds). Thus, the same parties are present in both cases,[3] and both the state court and this Court must determine which version of the 2010 Living Trust governs the trust assets. While the state-court action is broader than this action due to Ms. Martin's tort claims in that action, the dispositive issue in this Court is also before the state court. Accordingly, the Court concludes that these proceedings are parallel.

Next, the Court "must consider the scope and nature of the pending state court proceeding to ascertain whether the issues in controversy between the parties to the federal action . . . can be better settled by the state court." *Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 874 (citing *Brillhart*, 316 U.S. at 495). If so, then "a federal court may abstain from the proceeding because '[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where' a parallel state court proceeding is pending." *Royal Indem. Co.*, 511 F.3d at 793 (alteration in original) (quoting *Brillhart*, 316 U.S. at 495).

---

[3] The Court does note that, in the state-court action, Mr. Beall is sued in his representative capacity as trustee of the Second Restated Trust, while he is named in his individual capacity in this action. To the extent this distinction calls into question whether the same parties have been sued in the two actions—and the Court has found no authority for that proposition—it remains the case that Mr. Beall's interests in the two cases are substantially identical and therefore a resolution of the state-court action will "fully and satisfactorily resolve the dispute or uncertainty at the heart of the federal declaratory judgment action." *Lexington Ins. Co.*, 721 F.3d at 968 (internal quotation and citation omitted).

As previously explained, Ms. Martin and Mr. Beall are parties to both lawsuits. It appears that all necessary parties have been joined in the state-court action and that those parties are amenable to process. Further, both cases require deciding which version of the 2010 Living Trust governs the Policy proceeds. Moreover, the state-court proceeding is more robust: In addition to the claim for a declaratory judgment, the state-court complaint pleads several common law claims, all of which revolve around whether Mr. Beall has wrongfully acted as trustee. Also, the state-court proceeding is far more advanced, as liability has already been decided due to Mr. Beall's default. All of these considerations militate in favor of deferring to the state-court proceeding, as abstention would advance judicial economy and avoid unnecessary federal interference in disputes moored in state law. Accordingly, the Court **GRANTS** Ms. Martin's Motion to Dismiss or Abstain (Doc. 26).

When electing to abstain, a district court possesses discretion to either dismiss the case or impose a stay. *See Royal Indem.*, 511 F.3d at 797; *Capitol Indem.*, 218 F.3d at 875 n.2. The Supreme Court has counseled, however, that "a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n.2; *see also Int'l Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1271 (8th Cir. 1995). Further, since the funds at issue are in the registry of this Court, the Court finds that a stay rather than a dismissal is appropriate in this case.

### C. Motion to Intervene and Status of Interpleaded Funds

In his separate Motion to Intervene, Mr. Beall requests the Court allow him to intervene as successor trustee of the Second Restated Trust. Ms. Martin argues that this Motion is untimely and should be denied. Because the Court will abstain under *Brillhart/Wilton*, it need not reach these arguments and the Motion to Intervene (Doc. 22) is dismissed as **MOOT**.

The final issue before the Court is the status of the Policy proceeds currently held in the registry of the Court. Since the state court will determine which trust is valid, the state court will also determine who should act as trustee of the Policy proceeds. Thus, for purposes of judicial economy, it appears to the Court that the interpleaded funds should be transferred to the registry of the state court to await further order in that action. Accordingly, the Court gives the parties 14 days from the entry of this Order **TO SHOW CAUSE** as to why the funds deposited in this Court's registry should not be turned over to the Benton County Circuit Clerk.

### III. CONCLUSION

For the reasons outlined above, Claimant Pamela Martin's Motion to Dismiss or Abstain (Doc. 26) is **GRANTED** and the proceedings are **STAYED** pending the resolution of *Martin v. Beall*, 04CV-20-114, in the Circuit Court of Benton County. Claimant Mark Beall's Motion to Intervene (Doc. 22) is dismissed as **MOOT**. Finally, the parties have 14 days from the entry of this Order **TO SHOW CAUSE** as to why the funds deposited in this Court's registry should not be turned over to the Benton County Circuit Clerk.

**IT IS SO ORDERED** on this 3rd day of December, 2020.

                                                                                  TIMOTHY L. BROOKS
                                                                                  UNITED STATES DISTRICT JUDGE